### Edward H. Jacot *vs.* Joseph G. Wyatt & another.

If notice of an intention to take the poor debtor's oath is served upon the creditor less than a mile from the place of examination, the time allowed him for travel, under *St.* 1845 *c.* 444, § 4, need only be a proportionate fraction of an hour.

A poor debtor who has, pursuant to *St.* 1855, *c.* 444, entered into a recognizance to deliver himself up within ninety days for examination, giving notice to his creditor and making no default, and to abide the final order of the magistrate, and who does attend before the magistrate, is not bound to surrender himself to the officer until the magistrate has certified a refusal to admit him to the poor debtors' oath.

Action of contract upon a recognizance, entered into on the 16th of February 1856 by Wyatt as principal and the other defendant as surety before a commissioner of insolvency; reciting the recovery of a judgment by Jacot against Wyatt in the superior court, and the issuing thereon of an execution, upon which Wyatt was arrested and brought before the commissioner; and conditioned that Wyatt should " within ninety days deliver himself up for examination, giving notice to his creditor," as provided by *St.* 1855, *c.* 444," " and making no default at any time fixed for his examination, and abide the final order of the magistrate thereon."

The case was submitted to the judgment of the court upon the recognizance, the statements in which were admitted to be true, and the following facts:

On the application of Wyatt, the commissioner issued a notice to the plaintiff of Wyatt's desire to take the poor debtors' oath at the commissioner's office at ten o'clock in the morning on the 14th of May; and this notice was served at fifty minutes past eight o'clock on the same morning upon the plaintiff's attorney at his office, which was less than one sixth of a mile from the office of the commissioner.

Wyatt appeared at the time and place appointed, and was examined under oath by the commissioner, but the plaintiff did not appear, either in person or by attorney, and the examination was adjourned by the commissioner to May 15th, thence to May

16th, and again to May 23d, at all which times Wyatt duly appeared, but the plaintiff appeared at none of them, either in person or by attorney; and on the 23d of May the commissioner refused to administer the poor debtors' oath to Wyatt; but the execution on which Wyatt had been arrested having been returned to court, and there being no execution or precept upon which the commissioner could indorse any certificate of such refusal, the commissioner made no certificate or order in the case, and has made none since.

*H. W. Paine & T. F. Nutter,* for the plaintiff.

*J. H. Bradley,* for the defendants.

MERRICK, J.   1.  The official notice, issued by the commissioner of insolvency to the plaintiff, that the defendant had been arrested on an execution in his favor, and desired to take the oath for the relief of poor debtors, was seasonably served upon his attorney.   By the statute, the service must be made at least one hour before the time appointed for the examination of the debtor, with an additional allowance of time for travel at the rate of one day for every twenty-four miles to be travelled. *St.* 1855, *c.* 444, § 4.   In both of these particulars the requirements of the law were complied with.   The notice was served upon the plaintiff's attorney an hour and ten minutes before the time, and within one sixth of a mile of the place appointed for the debtor's examination.   It is urged for the plaintiff that this was insufficient, because, upon a just interpretation of the provisions of the statute, he was entitled to one full hour for his travel; claiming that in the computation of the rate at which the allowance is to be made, the day is to be divided only into hours, and that fractions of hours are not to be taken into consideration.   But there is no reason which calls for or can justify such a construction.   The language of the statute is plain and unambiguous, and perfectly in accordance with the manifest intent of the legislature that relief should be promptly afforded to an imprisoned debtor.   It does not contain a word which has a tendency to impose a limitation upon the division of a day into any known or appreciable sections of time, or to show that for this purpose hours are to be preferred to minutes.

If it be suggested that, by resorting to the more minute division, the time allowed to the creditor may be, as it was in the present case, very brief, the decisive answer is, that was the very object and purpose for which the statute was enacted. Nothing is more apparent than that its chief end and design was to secure to the debtor, with the least practicable delay in the progress of the summary process which it provided, a discharge from his imprisonment. It may be well however to recollect, that, in conformity to the interpretation heretofore given to the provisions of a previous statute to which the present is in many respects similar, the plaintiff's attorney had in fact more than two hours' notice before the oath could have been lawfully administered to the debtor. He had the whole of the hour succeeding the one named in the notice, during which it was his right to appear and interpose objections to the allowance of the relief which was sought by the debtor. *Hobbs* v. *Fogg*, 6 Gray, 251.

2. But it is contended for the plaintiff that the recognizance entered into by Wyatt was forfeited because he did not deliver himself up for examination according to the condition upon which it was given. He appeared before the magistrate at the time and place fixed for that purpose; and also upon the several days to which the proceedings were adjourned, and was then always ready and prepared to yield obedience to whatever order should be made in the premises. But the plaintiff insists that this was insufficient ; that the defendant, to avoid a breach of the condition of the recognizance, should have actually delivered himself up into the custody of the sheriff or his deputy.

We cannot think that a construction of the statute, which leads to this result, does justice to the language of its various provisions, or accords with its general scope and manifest purpose. As the first section declares that imprisonment for debt shall be forever abolished, so every provision which follows it shows an intention that, upon a compliance in the mean time with the requirements of law, no debtor shall be subjected to it, or detained in custody, until after a judicial determination that he is not entitled to the relief afforded by the statute. When

Jacot *v.* Wyatt & another.

a person is arrested, he shall, as soon as he has had reasonable opportunity to procure sureties, be carried before a competent magistrate. § 4. That is a duty peremptorily required of the officer who holds him in custody. Then the debtor at his own election may enter into recognizance with sufficient surety, in a sum double the amount of the execution, that he will either ap- pear at a time then to be fixed for his examination, or that he will thereafterwards within ninety days deliver himself up for that purpose, and will give notice to the creditor as required by law, will make no default, and will abide the final order of the magistrate thereon. § 9. These provisions seem to be decisive of the question. As soon as the debtor has entered into the required recognizance, he is at once relieved from the control of the officer; and it is plain that the arrest is not to be renewed while the proceedings in relation to the examination are still pending, nor until it has been brought to a close and a final order therein has been made. In the mean time he is to be free from all restraint by virtue of the execution. He has only to make no default, and to abide the final order of the magistrate. If in pursuance of that order the oath provided for the relief of poor debtors is administered to him, he is never to return into custody; and it is only when it has been duly adjudged that he is not entitled to that relief, that the right of the creditor to insist upon his imprisonment under the execution, or of the officer to subject him to it, can revive. A different construction of the statute, and one which should lead to the conclusion that the debtor is to deliver himself up to the sheriff and become actually and in fact his prisoner at an earlier period in the pro- ceedings, and even before his examination has been commenced, is directly opposed to its general design and the great object of securing the liberty of the debtor sought to be accomplished by it, and must be considered a mistaken and erroneous interpreta- tion of its provisions.

There is another consideration leading to the same result, which it may be proper to mention, although it is not necessary to enlarge upon it. No duty is imposed upon the debtor, either to keep watch of the officer or of the disposition which he shall

choose to make of the process committed to him for service. He cannot be expected therefore, when he is ready in compliance with the condition of his recognizance to deliver himself up for examination, to follow the officer in his round of duty ; nor required, at all events, and upon peril of its forfeiture, to be successful in bringing himself into his presence. He is, on the other hand, bound to give due and legal notice to the creditor, his agent or attorney, who may, if he desires it, see that the officer is present when the final order is made. If he does not choose to attend or to place himself in a position where he can execute his precept, there can afterwards be no ground for asserting that the debtor has failed to abide the final order, or has in any way been guilty of a breach of the condition of his recognizance.

In the present case no final order was ever in fact made. The defendant continued his attendance before the magistrate whenever and as long as he was required to do so ; and when the proceedings of the magistrate ceased, neither the execution nor the officer was present ; and the debtor therefore necessarily continued free and unmolested. It was through no fault of his, either in making default, or in manifesting an unwillingness to abide the final order, that he was not again taken upon the execution. There was therefore no forfeiture of his recognizance, and of course the present action against him cannot be maintained. *Judgment for the defendants.*